Letcher ADAMS, and Claude Alston, Individually and on behalf of all others similarly situated

v.

Joseph A. CALIFANO, Jr., Secretary, Department of Health, Education and Welfare, and David W. Hornbeck, Superintendent of Schools, Maryland Department of Education, Individually and in their official capacities.

Civ. A. No. N-78-1802.

United States District Court,
D. Maryland.

Aug. 17, 1979.

Dennis M. Sweeney, Dennis M. Carroll, Peter M. D. Martin and Eileen Franch of Legal Aid Bureau, Inc., Baltimore, Md., for plaintiffs.

Natalie R. Dethloff, Social Security Division of HEW, and Lawrence J. Jensen and Jonathan Ginsburg, U. S. Dept. of Justice, Washington, D. C., for defendant Joseph A. Califano, Jr., Secretary, Dept. of Health, Ed. and Welfare.

Stephen H. Sachs, Atty. Gen. of Maryland, and Thomas E. Plank, Asst. Atty. Gen., Baltimore, Md., for defendant David W. Hornbeck, Superintendent of Schools, Maryland Dept. of Ed.

NORTHROP, Chief Judge.

Plaintiffs bring this action to challenge certain actions of the Secretary of Health, Education, and Welfare (the Secretary) and the Maryland State Superintendent of Schools (the State Defendant) in their administration of the federal Social Security and Supplemental Security Income programs. Through a complex statutory and regulatory scheme, the federal government, with the assistance and cooperation of the states, provides assistance to disabled persons. This assistance is provided under Title II of the Social Security Act, 42 U.S.C. §§ 423 *et seq.* and Title XVI of that Act, 42 U.S.C. §§ 1381 *et seq.*

In order to determine whether a person qualifies as "disabled" under the Act, the

Secretary has established a process under which a person can apply for disability benefits and appeal unfavorable decisions. Plaintiffs in this action challenge the sufficiency of a notice that is sent to a claimant when he or she is found ineligible for benefits at one stage of the process. Plaintiffs seek to certify this case as a class action in order to represent all Maryland claimants who are similarly situated. Presently before the Court are cross motions for summary judgment and alternative motions to dismiss by both defendants.

## THE CLAIMS PROCESS

Under the Secretary's regulations, a claim for disability payments is initiated by filing an application with the appropriate office of the Social Security Administration (SSA). 20 C.F.R. §§ 404.601–.619, 416.-300–.345 (1978).[1] The local office of the SSA then collects information from the applicant. Under a scheme organized pursuant to 42 U.S.C. § 421 and § 1383b(a), the Secretary can contract with a state agency to handle initial adjudications of disability. In Maryland, the Secretary has entered into an agreement with the Division of Vocational Rehabilitation of the Maryland Department of Education. See Md.Educ.Code Ann. § 21–302. The State Defendant, David W. Hornbeck, is the head of that agency. The SSA continues to be responsible for ascertaining whether the claimant is properly insured under Title II or is income-qualified under Title XVI.

The State agency, in accordance with federal guidelines, evaluates the medical aspects of claims for disability payments and makes an initial decision. This decision is usually based solely on documentary evidence gathered by the SSA, but the disability examiner can contact the claimant to get more information or order the claimant to be examined by a state-paid physician. See 20 C.F.R. §§ 404.1527, 416.927. Notice of the initial decision is sent to the claimant or

his appropriate representative. If the initial decision denies a claim in whole or in part, the notice must state the basis for the determination and inform the claimant of the right to reconsideration or other appellate review. 20 C.F.R. §§ 404.907, 416.1404.

A disability claimant who is dissatisfied with the initial decision may request reconsideration. 20 C.F.R. §§ 404.909–.913, 416.-1408–.1413. The reconsideration is made by another examiner at the State agency. The reconsidering examiner reviews the initial determination and can consider any new evidence. 20 C.F.R. §§ 404.914, 416.1415. After the reconsideration decision has been made, a "Notice of reconsidered determination" must be sent to the claimant. In the words of 20 C.F.R. § 416.1422:

> Notice of reconsidered determination.
> Written notice of the reconsidered determination shall be mailed to the parties at their last known addresses. The reconsidered determination shall state the specific reasons therefor and inform the parties of their right to a hearing, or, if appropriate, inform the parties of the requirements for use of the expedited appeals process (see § 416.1424).[2]

It is this notice which is the crux of this case.

Following an unfavorable reconsideration, a claimant can, within 60 days, request a hearing before an Administrative Law Judge (ALJ). 20 C.F.R. §§ 404.918, 416.-1426. If no request for a hearing is made, the reconsideration determination becomes final. If the ALJ rules against the claimant, the claimant can appeal further through the Appeals Council of the SSA's Bureau of Hearings and Appeals and ultimately to the federal courts.

The plaintiffs in this action are disability claimants under Title II and/or Title XVI of the Act. Their claims were denied, in whole or in part, through the reconsideration stage of the claim process. They allege

---

1. The procedures followed under Title II and Title XVI are not materially different. The Court will cite to both sets of applicable regulations. Part 404 of the regulations concerns Title II; Part 416 concerns Title XVI. All citations are to the 1978 version of C.F.R.

2. 20 C.F.R. § 404.915 is virtually identical.

that the reconsideration notices they received were legally insufficient, and that by sending out insufficient notices the defendants are violating the Constitution, the Social Security Act, and the Secretary's own regulations.

### THE NOTICES

The facts concerning the reconsideration notices are not in dispute. When the State agency's examiners make a decision at either the initial or reconsideration stage, they "create" the notice to the claimant by selecting "stock paragraphs" from a list provided by SSA. In some cases, the notices are typed out from these stock paragraphs. In other cases, the paragraphs are stored in a computer at an SSA regional office. The paragraphs are each identified by a code number. Under the computer system, the state agency examiner tells the SSA computer which paragraphs to include in the notice and the computer generates the notice. For example, if the examiner specifies paragraphs MU50, MU80, MU70, and MU81, the computer will generate the following notice, which was actually received by plaintiff Letcher Adams:

> UPON RECEIPT OF YOUR REQUEST FOR RECONSIDERATION WE HAD YOUR CLAIM FOR DISABILITY INSURANCE BENEFITS INDEPENDENTLY REVIEWED BY A PHYSICIAN AND DISABILITY EXAMINER IN THE STATE AGENCY WHICH WORKS WITH US IN MAKING DISABILITY DETERMINATIONS. THE EVIDENCE IN YOUR CASE HAS BEEN THOROUGHLY EVALUATED; THIS INCLUDES THE MEDICAL EVIDENCE AND THE ADDITIONAL INFORMATION RECEIVED SINCE THE ORIGINAL DECISION. WE FIND THAT THE PREVIOUS DETERMINATION DENYING YOUR CLAIM WAS PROPER UNDER THE LAW.
>
> TO BE CONSIDERED DISABLED, A PERSON MUST BE UNABLE TO PERFORM ANY SUBSTANTIAL GAINFUL WORK DUE TO A MEDICAL CONDITION WHICH HAS LASTED OR CAN BE EXPECTED TO LAST FOR A CONTINUOUS PERIOD OF AT LEAST 12 MONTHS. THE IMPAIRMENT MUST BE SO SEVERE AS TO PREVENT THE PERSON FROM WORKING NOT ONLY IN THE PERSON'S USUAL OCCUPATION BUT IN ANY OTHER SUBSTANTIAL GAINFUL WORK CONSIDERING AGE, EDUCATION, TRAINING, AND WORK EXPERIENCE. THIS CONDITION MUST BE DISABLING AT A TIME WHEN THE PERSON MEETS THE EARNINGS REQUIREMENT OF THE LAW.
>
> THIS NOTICE CONCERNS ONLY YOUR SOCIAL SECURITY DISABILITY APPLICATION. IT IS NOT A DECISION AS TO WHETHER RETIREMENT, SURVIVORS, HOSPITAL AND MEDICAL INSURANCE, OR SUPPLEMENTAL SECURITY INCOME BENEFITS ARE PAYABLE.
>
> IF YOU BELIEVE THAT THE RECONSIDERATION DETERMINATION IS NOT CORRECT, YOU MAY REQUEST A HEARING BEFORE AN ADMINISTRATIVE LAW JUDGE OF THE BUREAU OF HEARINGS AND APPEALS. IF YOU WANT A HEARING, YOU MUST REQUEST IT NOT LATER THAN 60 DAYS FROM THE DATE YOU RECEIVE THIS NOTICE. READ THE ENCLOSED LEAFLET BHA–1 FOR A FULL EXPLANATION OF YOUR RIGHT TO APPEAL.
>
> IF YOU DO NOT REQUEST A HEARING OF YOUR CASE WITHIN THE PRESCRIBED TIME PERIOD, YOU STILL HAVE THE RIGHT TO FILE ANOTHER APPLICATION AT ANY TIME.
>
> IF YOU HAVE QUESTIONS ABOUT YOUR CLAIM, YOU SHOULD GET IN TOUCH WITH ANY SOCIAL SECURITY OFFICE. MOST QUESTIONS CAN BE HANDLED BY TELEPHONE OR MAIL. IF YOU VISIT AN OFFICE, HOWEVER, PLEASE TAKE THIS LETTER WITH YOU.

*Exhibit D to plaintiff's Complaint*, filed September 22, 1978.

The stock paragraphs do not refer to the specific medical or vocational reasons for denying the disability claim. They generally set out only the statutory or regulatory standards that were applied and tell the claimant that he does not qualify. The medical or vocational reasons are prepared at both the initial and reconsideration stages and are set out by the examiner on Form SSA–831. This form is not sent to the claimant at any stage of the proceedings, but may be available to the claimant or an appropriate representative for inspection prior to the ALJ hearing. The plaintiffs contend that the reconsideration notices, like the one above, are insufficient because they tell the claimant nothing about the individual medical or vocational reasons for the decision in his or her case. They claim that, at the very least, the information on Form SSA–831 should be sent to each claimant who is denied benefits.

The plaintiffs initially filed a motion for a preliminary injunction. Subsequently, however, the parties agreed to a plan whereby the Court would hear and decide cross motions for summary judgment and the plaintiffs' motion for class certification. The motion for a preliminary injunction was then withdrawn. Oral argument was held and the Court, by this opinion, renders its decision on all pending issues.

The Secretary and the State Defendant each assert different reasons for dismissing this case or for granting summary judgment in their favor. Since the liability of the State Defendant on the merits is linked to that of the Secretary, the Court will consider the motion for class certification first, then the substantive case against the Secretary, and finally the substantive case against the State Defendant.

## THE CLASS ACTION

█ The Court must decide plaintiffs' motion to certify a class before considering the merits of their case. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). The plaintiffs seek to represent a class composed of:

[A]ll applicants for disability benefits under Title II and/or Title XVI of the Social Security Act whose claims have reached the reconsideration stage of the administrative process and who: (1) either (a) have had or will have their claims reviewed by the Maryland Disability Determination Services Program or (b) were, or will be residents of Maryland at the time their claims were or will be reconsidered and whose claims were or will be reviewed on reconsideration directly by the Social Security Administration through its Bureau of Disability Insurance; (2) have received or will receive a form letter notice of reconsideration denying their claims for failure to meet the disability requirements of the Social Security Act; (3) have not received or will not have received written notice of the specific legal and factual reasons for the denial of their claims, including detailed findings of fact and a statement of the evidence relied on, prior to the expiration of the period during which a hearing must be requested; and (4) have not subsequently received a fully favorable decision on their claims. Provided, however, that the class shall not include any applicants for disabled widow's benefits or disabled child's benefits under Title II of the Social Security Act, nor any applicants for disability benefits for a child under age 18 under Title XVI of the Social Security Act.

In a letter to the Court dated July 11, 1979, plaintiffs' counsel further amend the class to include only those persons receiving reconsideration notices within 60 days prior to the filing of the complaint.

The initial question is whether the plaintiffs satisfy the requirements of Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The Secretary does not seriously challenge the plaintiffs' allegations concerning the numerosity of the class or the suitability of the representative parties. According to plaintiffs, the class consists of approximately 7000 persons per year. Plaintiffs' counsel, attorneys with the Legal Aid Bureau in Baltimore, have handled other class actions in this Court, and the Court knows of no reason why they or the named plaintiffs cannot competently represent this class. *See generally Linder v. Litton Systems, Inc.*, 81 F.R.D. 14 (D.Md.1978).

The Secretary does challenge the assertion that there are common questions of law or fact and that the representative parties have typical claims or defenses. This argument is based on the Secretary's claim that some or all of the members of the class suffered no injury as a result of the Secretary's allegedly defective reconsideration notice. As is more fully described in the section on *Standing & Mootness*, the Court finds that the plaintiffs have suffered at least some injury by being hampered in their ability to intelligently decide whether to request an ALJ hearing.

■ In any event, the Secretary is really arguing that a class cannot be certified because the members of the class may have varying degrees of injury. Rule 23(a), however, does not require identity or typicality of injury, especially where the Court need not inquire into individual cases to determine the appropriate relief. *Wright v. Califano*, 587 F.2d 345, 350 (7th Cir. 1978). Subsection (2) requires common questions of law or fact. Clearly, there are questions of law common to the class. Subsection (3) requires typical claims or defenses, not typical injuries. The legal claims of the representative parties are clearly typical of the class. It is, moreover, difficult to imagine why any member of the proposed class would prefer the current reconsideration notice to the one requested by the plaintiffs. Thus, no member of the class would have an interest adverse to that of the representative parties. *See Sosna v. Iowa*, 419 U.S. 393, 403 n.13, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). Accordingly, the Court

finds that the plaintiffs have satisfied the requirements of Rule 23(a).

■ It is also clear that this case fits under Rule 23(b)(2) as a case where "the party opposing the class has acted or refused to act on grounds generally applicable to the class . . . ." The class action is especially appropriate where, as here, the claims of the members of the class may become moot as the case progresses. *See Wright v. Califano*, 587 F.2d 345, 350 (7th Cir. 1978); *Jones v. Califano*, 576 F.2d 12, 22 (2d Cir. 1978); *Doe v. Lally*, 467 F.Supp. 1339, 1343–47 (D.Md.1979). *See generally Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975); *Inmates v. Owens*, 561 F.2d 560 (4th Cir. 1977).

■ A final argument of the Secretary in opposition to class certification is that 42 U.S.C. § 405(g), the basis for jurisdiction in this case, *see Jurisdiction, infra*, does not authorize class relief. The Secretary contends that § 405(g) contemplates only case-by-case judicial review. This argument has recently been rejected by the Supreme Court, as well as several circuit courts. *See Califano v. Yamasaki*, —— U.S. ——, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979); *Wright v. Califano*, 587 F.2d 345 (7th Cir. 1978); *Caswell v. Califano*, 583 F.2d 9 (1st Cir. 1978); *Jones v. Califano*, 576 F.2d 12 (2d Cir. 1978); *Liberty Alliance of the Blind v. Califano*, 568 F.2d 333 (3d Cir. 1977); *Johnson v. Mathews*, 539 F.2d 1111 (8th Cir. 1976); *Jimenez v. Weinberger*, 523 F.2d 689 (7th Cir. 1975), *cert. denied*, 427 U.S. 912, 96 S.Ct. 3200, 49 L.Ed.2d 1204 (1976).

This Court, of course, follows the holdings of the above cases. The Secretary is correct in asserting that § 405(g) does not expressly authorize, and does not seem to contemplate, class relief. But the statute does not forbid class relief, and such relief is clearly appropriate to ensure uniformity of relief. *See, e. g., Jones v. Califano, supra*.

This Court will certify the class as requested by the plaintiffs and will grant the motion of Theodore A. Wynn to intervene as a party plaintiff to be doubly sure that

there is no mootness problem. *See Sosna v. Iowa,* 419 U.S. 393, 402 & n.11, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975) (possibly requiring that there be a named plaintiff with a "live" controversy at the time of class certification). Wynn has received a notice denying his request for reconsideration, but he has not yet had an ALJ hearing. Since the other persons moving to intervene are members of the class and are represented by plaintiffs' counsel, there is no need to grant their motions, and they will be denied.

## THE SECRETARY'S PROCEDURAL OBJECTIONS

Before reaching the merits of the case against the Secretary, the Court must consider several procedural objections. These objections fall into the somewhat intermingled categories of jurisdiction, ripeness (exhaustion), standing, and mootness.

### A. Jurisdiction

■ The plaintiffs' complaint alleges three bases of jurisdiction for this action: 42 U.S.C. §§ 405(g) and 1383(c)(3), which grant jurisdiction to review final orders of the Secretary in Social Security cases; 28 U.S.C. § 1361, which grants jurisdiction for mandamus actions against federal officials; and 28 U.S.C. § 1331(a), the general federal question jurisdiction. From subsequent memoranda, it is clear that the plaintiffs concede that the action cannot be based on § 1331. Since the Court finds that it has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3), it need not reach the question of mandamus jurisdiction.

The relevant part of § 405(g) (Title II) reads as follows:

> Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow.

Section 405(g) is supplemented by § 405(h), which, in the 1976 edition of the U.S.Code, reads this way:

> The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under sections 1331 or 1346 of title 28 to recover on any claim arising under this subchapter.[3]

The Government contends that § 405(h) does not provide jurisdiction in this case because it precludes any suit by these plaintiffs until the Secretary has made a final decision on their claims.

The Supreme Court, however, has created exceptions to the finality requirement of § 405(g). In *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), the Court held that the Secretary could, and in that case did, waive the finality requirement. The case involved a challenge to the constitutionality of provisions of the Social Security Act which denied benefits to certain widows and stepchildren. The Court held that the plaintiff did not have to go through the Secretary's complete appeals procedure to challenge the constitutionality of the Act, since constitutionality was a matter beyond the competence of the Secretary to decide. *Id.* at 765–67, 95 S.Ct. 2457. The Court noted that the Secretary did not challenge the "finality" of the constitutional issue and construed this silence to be a waiver of the finality requirement.

In *Mathews v. Diaz,* 426 U.S. 67, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976), the Court expanded the "waiver" exception to § 405(g). In *Diaz,* the Secretary explicitly challenged

---

**3.** This may be one of the few instances where there is a material difference between the Code and the Statutes at Large. It is not clear whether 42 U.S.C. § 405(h) also precludes jurisdiction under 28 U.S.C. § 1361. *See Califano v. Yamasaki,* —— U.S. ——, 99 S.Ct. 2545, 2556, 61 L.Ed.2d 176 (1979) (reversing in part *Elliott v. Weinberger,* 564 F.2d 1219 (9th Cir. 1977)).

the plaintiff's failure to exhaust the entire appellate process, but the Secretary stipulated that no facts were in dispute and that the constitutional issue was ripe for decision. *Id.* at 76, 96 S.Ct. 1883. The Supreme Court held that the Secretary's stipulations amounted to a constructive waiver of any exhaustion requirement.

A closely related, but separate exception to the finality requirement of § 405(g) was carved out in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Eldridge attacked the constitutionality of the procedures used by the Secretary to cut off benefits to disabled Social Security recipients. He claimed that due process required an evidentiary hearing before disability payments were stopped. He filed suit after receiving a determination from SSA that he was no longer disabled. He did not even request reconsideration—a step which was still available to him. *Id.* at 324–25, 96 S.Ct. 893. The Court held that Eldridge had satisfied the jurisdictional prerequisites of § 405(g). It noted that Eldridge had stated a colorable constitutional claim and that his constitutional challenge was "entirely collateral to his substantive claim of entitlement." *Id.* at 330–31, 96 S.Ct. at 900.

This Court finds that, under the principles of *Salfi, Diaz,* and *Eldridge,* jurisdiction is found under § 405(g). Under the *Eldridge* standard, this challenge to the Secretary's notice procedure is clearly collateral to any of the plaintiffs' substantive claims of entitlement. The only disputed issue with respect to the plaintiffs' entitlement is the extent of their disability—a matter which is wholly irrelevant to this action. The plaintiffs do not expect to be granted benefits as a result of this suit; they simply want a more detailed notice.

The Government argues that the procedural issue is not collateral, but is "inextricably intertwined" with the substantive claim because the plaintiffs assert that the defective reconsideration notice impeded their ability to collect evidence for a hearing on that substantive claim. Obviously, any procedural matter can conceivably affect the outcome of a substantive claim, and the plaintiffs contend that it has here. But that does not mean the procedural question is "inextricably intertwined" with the substantive claim. A procedural matter is sufficiently collateral to the substantive claim of entitlement when it has nothing to do with the issues involved in the determination of disability. *See Caswell v. Califano,* 583 F.2d 9, 14 & n.11 (1st Cir. 1978). That is the case here.

The Court also finds that the plaintiffs have presented a colorable constitutional claim, as required by *Eldridge.* The Secretary disputes this by claiming that Social Security claimants clearly have no constitutionally protected property interest in benefits under the case of *Lavine v. Milne,* 424 U.S. 577, 96 S.Ct. 1010, 47 L.Ed.2d 249 (1976). This Court, however, reads *Milne* to say, at most, that applicants are entitled to fewer due process protections than those already receiving benefits. *See Caswell v. Califano, supra* at 14.

The rationale of the *Milne* decision is not too clear, but the Supreme Court never says that applicants (for welfare in that case) are not entitled to any due process at all. In fact, the Court goes to great lengths to analyze the procedures available under the challenged New York law. The Court discusses the burden of proof, *Lavine v. Milne, supra* at 585, 96 S.Ct. 1010, the timing of the hearing, *id.* at 586, 96 S.Ct. 1010, and the availability of retroactive payments to correct erroneous initial decisions, *id.* at 587, 96 S.Ct. 1010. Finally, the Court states:

The purpose of [the New York law] is permissible, and the procedure for fulfilling that purpose, far from being unconstitutional, is one conventionally applied to applicants for governmental benefits.

*Id.* This discussion and conclusion would all be irrelevant if the Court had intended to hold that applicants had no property interest in governmental benefits.

While this Court ultimately concludes that these plaintiffs do not have a valid constitutional claim, *see* pp. 984–985, *infra,* the claim is at least colorable. It is not, as the Secretary asserts, frivolous.

It should also be noted that at least two courts have concluded that § 405 provides jurisdiction if the plaintiffs allege a colorable claim that the Secretary is misconstruing the Social Security Act. *Wright v. Califano*, 587 F.2d 345, 349 (7th Cir. 1978); *Liberty Alliance of the Blind v. Califano*, 568 F.2d 333, 346 (3d Cir. 1977). The Third Circuit, in *Liberty Alliance*, reasoned that:

> The test for exhaustion of a statutory issue in an individual case, we believe, should be whether the Secretary has taken a final position on that issue.

*Id.* The Second Circuit, in *Jones v. Califano*, 576 F.2d 12 (2d Cir. 1978), agreed in principle that, in some circumstances, a "final position" of the Secretary may be a "final decision" for purposes of § 405(g). *Id.* at 19.

The reasoning of these courts is clearly in line with the constructive waiver rationale of *Diaz* and *Salfi*. The Secretary, by his actions in this lawsuit, has conceded that his position with regard to the sufficiency of the reconsideration notice is a final position. To require the plaintiffs to complete the administrative appeals process before challenging the notice procedure would surely "be a commitment of administrative resources unsupported by any administrative or judicial interest." *Weinberger v. Salfi*, supra, 422 U.S. at 765–66, 95 S.Ct. at 2467; *see Ellison v. Califano*, 546 F.2d 1162, 1164–65 (5th Cir. 1977).

It is apparent that further administrative action on the issue of the reconsideration notice would be futile. *Cf. Lowther v. Montgomery County*, 561 F.2d 1120 (4th Cir. 1977), *cert. denied*, 435 U.S. 994, 98 S.Ct. 1644, 56 L.Ed.2d 83 (1978). There is nothing in the HEW regulations to even remotely suggest that the ALJ or the Appeals Council has authority to order a new notice procedure. These bodies simply adjudicate individual claims of disability. *See generally* 20 C.F.R. §§ 404.924, 404.947. The Secretary can, of course, change his own regulations or his interpretation of those regulations, but it is clear that any reinterpretation or change will not occur during the course of a disability claim appeal. When, as here, there is absolutely no purpose served by further administrative review of claims that the Secretary's procedure is illegal and there are no relevant disputed facts to be resolved at the administrative level, the issue of finality must be considered waived by the Secretary. *See, e. g., Wright v. Califano*, 587 F.2d 345 (7th Cir. 1978).

Under the principles of *Diaz*, *Salfi*, and *Eldridge*, this Court finds that it has jurisdiction over this case under 42 U.S.C. §§ 405(g) and 1383(c)(3).

The Secretary raises a number of other procedural objections to this suit, including (1) the claims of the plaintiffs are not yet ripe because they have not exhausted their administrative remedies, (2) the plaintiffs here lack standing, and (3) the claims of the named plaintiffs are moot.

It is rather unusual to have a party argue that his opponents' claims are not yet ripe and are overripe (moot) at the same time. This anomaly is due to the unusual procedure posture of this case. The two original named plaintiffs are Letcher Adams and Claude Alston. At the time this suit was filed, each had received at least one notice (described more fully above) informing him that his request for benefits had been denied after reconsideration. Both plaintiffs claimed various injuries resulting from the allegedly improper notice. Specifically, the plaintiffs claimed that they had been harmed in the following ways:

(a) They are being denied the entitlement to an important procedural right provided them by Congress through the Social Security Act and by the Secretary through his regulations;

(b) The plaintiffs are denied crucial information needed to make the decision about requesting a hearing on the denial since they are not provided the reasons for the reconsideration determination;

(c) The plaintiffs are hampered in their attempts to obtain representation or advice on their claims since they do not have readily available the reasons for the agency denial; and

(d) The plaintiffs that do request a hearing are prevented from adequately preparing for the actual hearing on their claims since they are not provided with the reasons for the previous denial of their claim.

*Memorandum in Support of Plaintiffs' Motion for Preliminary Injunction at 33–34,* filed October 18, 1978.

Since the plaintiffs were represented by counsel, however, they were able to obtain the more detailed reasons for their denial of benefits. Both Adams and Alston pursued further appeals and, while this suit has been pending, both have been granted the benefits they sought. In order to avoid mootness problems while the case was pending, plaintiffs' counsel filed motions to intervene on behalf of other claimants who had received the allegedly defective notices, but had not yet completed their hearing and appeals processes. As noted in the discussion of Class Action, *supra*, the Court has granted the latest of these motions for intervention.

## B. *Exhaustion and Ripeness*

This argument can be disposed of quickly since it is closely related to *Jurisdiction, supra.* The Secretary asserts that the only claims that would be ripe for this Court's review are those by a plaintiff who was denied benefits after exhausting all possible appeals. For the reasons discussed in the section on *Jurisdiction, supra,* the Court finds that exhaustion would not be helpful and, in fact, would be futile. The Government contended at oral argument that only after a full hearing and appellate process would the Court be able to determine the extent of the harm suffered by the plaintiffs as a result of the allegedly insufficient notice. The extent of harm suffered, however, is not at issue. Clearly, the plaintiffs must sustain some injury in order to have standing, *see Standing & Mootness, infra,* but the precise extent of injury is irrelevant to the issues in this case—whether the Secretary is complying with the Constitution, Social Security Act, and his own regulations. The Court concludes that this issue is ripe for adjudication and that exhaustion is not required.

## C. *Standing and Mootness*

With respect to standing, the Secretary argues that the plaintiffs cannot prosecute this case because their injuries are either nonexistent or moot.

The Secretary first asserts that the injuries the plaintiffs claim they suffered are not the type that can support standing. This Court disagrees. These plaintiffs have satisfied the traditional tests for standing. They have shown a "distinct and palpable injury" which is "fairly traceable" to the conduct of the Secretary. *See Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 72, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978). The inability to make an informed decision about future hearings or appeals is in itself an "injury in fact" that will support standing. *See generally United States v. SCRAP,* 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973).

The Secretary argues that there is no injury in fact because the material in a claimant's file is available for inspection by the claimant prior to an ALJ hearing. The Secretary's Claims Manual, however, permits a claimant to see his own medical records only after an appropriate official determines that release of the records would not "be likely to have an adverse effect on the subject individual . . . ." *See* Claims Manual § 7304(c), Exhibit F to *Plaintiffs' Reply to Federal Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment,* filed January 4, 1979. An applicant thus may be denied access to the very medical records used to make a decision about his disability. In any event, there is nothing in the record to indicate that claimants are even told that they may inspect these records.

Since it is the Secretary's policy which dictates the content of the notices, there is no question that the injury is fairly traceable to the actions of the Secretary. *See generally Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450

984

(1977); *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976).

■ The Secretary also contends that the plaintiffs lack standing because they no longer suffer any injuries they might have had, *i. e.*, that their claims are moot. The argument is based on the fact that the two named plaintiffs have successfully pursued their appeals despite the lack of information in the reconsideration notices.

This argument is similar to one that has been rejected by several courts. *See, e. g., Wright v. Califano*, 587 F.2d 345, 350 (7th Cir. 1978). For example, in *Jones v. Califano*, 576 F.2d 12 (2d Cir. 1978), the court was faced with the situation where Social Security claimants who requested a hearing would be awarded certain benefits, but those who failed to request a hearing would be denied those benefits. This anomaly arose because the Secretary refused to implement a method of calculation mandated by the SSA Appeals Council. Thus, claimants who were denied benefits at the initial stages could get them simply by requesting a hearing and, if necessary, appealing to the Appeals Council. *Id.* at 14–17. Just as in this case, the named plaintiffs no longer suffered any injury once they appealed their cases and were awarded full benefits.

In *Jones*, the Second Circuit reviewed the line of cases holding that actions should not be dismissed as moot when the issues involved are "capable of repetition, yet evading review . . . ." *Id.* at 20 (quoting *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310 (1911)); *see, e. g., Nebraska Press Association v. Stuart*, 427 U.S. 539, 546–47, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976); *Roe v. Wade*, 410 U.S. 113, 125, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). The *Jones* court held that:

> The rationale of all these cases is that judicial review cannot be entirely fore-

closed by the fortuity of a termination of the individual grievance. The test is whether petitioners are adversely affected by government "without a chance of redress."

*Jones v. Califano, supra* at 20.

Like *Jones*, the issue in this case would defy judicial review if dismissed as moot or for lack of standing. Using the Secretary's logic, claimants who originally had standing to assert a valid claim would automatically lose their standing and moot their cases by hiring counsel and/or pursuing their appeals. This illogical result is completely at odds with the reasoning of the cases above.[4]

Since the Court finds no merit in any of the Secretary's procedural objections, it will proceed to examine the substantive case against the Secretary.

## THE SUBSTANTIVE CASE AGAINST THE SECRETARY

### A. The Constitutional Claim

■ The plaintiffs allege that the failure to provide detailed medical and vocational reasons in the reconsideration denial notice amounts to a failure to provide due process as required by the fifth amendment. Even assuming arguendo that Social Security applicants have a constitutionally protected property interest in obtaining benefits, the plaintiffs have not shown that the notice used by the Secretary offends due process. The plaintiffs cite no authority for the proposition that the Constitution requires specific reasons to be sent to rejected claimants at a prehearing reconsideration stage.

Certainly the notice that is sent affords claimants notice of the availability of a hearing and the broad issue to be resolved therein. *Cf. Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The only case

---

4. The Supreme Court has recently stated that jurisdiction, once properly acquired, can only be lost due to mootness if:

> (1) it can be said with assurance that "there is no reasonable expectation . . ." that the alleged violation will recur, and

> (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.

*County of Los Angeles v. Davis*, —— U.S. ——, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979) (citations omitted). The present case clearly does not satisfy either of these tests.

cited by plaintiffs where due process required a statement of reasons for an administrative decision is *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). The Court in *Kelly* required "an adequate notice detailing the reasons for a proposed termination" before a state could cut off welfare payments. *Id.* at 267–68, 90 S.Ct. 1011. The Court did not say how specific the "reasons" had to be.

An important distinction between this case and *Kelly* is that *Kelly* involved the termination of ongoing welfare payments, while the plaintiffs here have not even begun to receive benefits. In *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), the Court had occasion to determine what process was due to certain disability claimants under the Social Security Act. The Court rejected the assertion that claimants were entitled to full rights of cross-examination and distinguished *Kelly*:

> *Kelly*, however, had to do with termination of AFDC benefits without prior notice. . . . [In *Perales*, we] are not concerned with termination of disability benefits once granted. Neither are we concerned with a change of status without notice.

*Id.* at 406–07, 91 S.Ct. at 1430. Clearly, Social Security claimants are not constitutionally entitled to the full due process protections outlined in *Kelly*. *See also Lavine v. Milne*, 424 U.S. 577, 96 S.Ct. 1010, 47 L.Ed.2d 249 (1976).

In this case, the Secretary's notice does inform claimants of the broad reason for the denial on reconsideration. While the notice may not be helpful to claimants trying to decide whether to request a hearing, it does serve its limited constitutional purpose. It is especially important to note that if the applicant requests a hearing, he will receive a full decision from an ALJ.

### B. *The Statutory Claim*

■ The plaintiffs also charge that the Secretary is required by the Social Security Act to send more detailed notices. Their claim is based upon two similar sections of the Act—42 U.S.C. §§ 405(b) (Title II) and 1383(c)(1) (Title XVI).

The relevant part of § 405(b) reads as follows:

> The Secretary is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under this subchapter. Upon request by any such individual, . . . [the Secretary] shall give such applicant . . . reasonable notice and opportunity for a hearing with respect to such decision, and, if a hearing is held, shall, on the basis of evidence adduced at the hearing, affirm, modify, or reverse his findings of fact and such decision.

The relevant part of § 1383(c)(1) reads as follows:

> The Secretary is directed to make findings of fact, and decisions as to the rights of any individual applying for payment under this subchapter. The Secretary shall provide reasonable notice and opportunity for a hearing to any individual who is or claims to be an eligible individual or eligible spouse and is in disagreement with any determination under this subchapter with respect to eligibility of such individual for benefits, . . . and, if a hearing is held, shall, on the basis of evidence adduced at the hearing affirm, modify, or reverse his findings of fact and such decision.

The plaintiffs argue that the Secretary did not render the findings of fact required by these two sections. It is apparent, however, that the disability examiners make the required findings of fact, but they do not send them to the claimant. The findings of fact are included on the SSA–831 forms discussed earlier. At oral argument, plaintiffs' counsel stated that his clients would be satisfied if the Secretary sent a copy of a properly prepared SSA–831 form to each unsuccessful claimant.

The only problem with the plaintiffs' statutory argument is that, while the statute does require findings of fact, it does not, by its terms, require the Secretary to send a copy of these findings to the claim-

ant. The two quoted sections do require the Secretary to give any prejudiced individual "reasonable notice and opportunity for a hearing," but there is no indication that the notice must contain the findings of fact. The notice does alert the claimant to the issue to be resolved at the hearing and how to go about requesting a hearing. Under the circumstances, the Court concludes that this notice satisfies the statutory requirement of reasonable notice.

It may seem illogical that Congress would require the Secretary to make findings of fact, but not require him to furnish a copy to the claimant. However, the Government correctly argues that Congress, through the Social Security Act and the Administrative Procedure Act already provides for a complete hearing and full decision by an ALJ.

In contrast to the Social Security Act, several sections of the U.S. Code require findings of fact and do specify that those findings shall be served on a party or released to the public. *See, e. g.,* 29 U.S.C. § 183(a) (Director of Federal Mediation and Conciliation Service may establish "an impartial Board of Inquiry to investigate the issues involved in the dispute and to make a written report thereon to the parties . . . The written report shall contain the findings of fact . . . ."); 30 U.S.C.A. § 811(c) (West Supp.1979) ("The Secretary shall issue a decision incorporating his findings of fact therein, and send a copy thereof to the operator or the representative of the miners."); 49 U.S.C. § 10310(a) ("The Interstate Commerce Commission shall make a written report . . . . The report shall include the findings, conclusions, and the order of the Commission and, if damages are awarded, the findings of fact supporting the award."). *See also* 5 U.S.C. § 7118(a); 7 U.S.C. § 193(b); 12 U.S.C. § 1786(i); 15 U.S.C. § 45(b); 15 U.S.C. § 2623(b); 20 U.S.C. § 1234c(c); 42 U.S.C. § 300j–7(c); 42 U.S.C. § 7193(c); 49 U.S.C. § 17(5).

In light of the entire statutory scheme and the lack of any specific language requiring the dissemination of the findings of fact, the Court finds that the Secretary's notice is not defective under the Social Security Act.

### C. The Regulatory Claim

Plaintiffs' final argument is that the Secretary's notice does not comply with his own regulations. Those regulations are found at 20 C.F.R. § 404.915 and § 416.1422 (quoted at p. 976, supra). Both regulations require that the "reconsidered determination" notice sent to a claimant "state the specific reasons therefor . . . ." The dispute between the parties here is over the meaning of the term "specific reasons." The plaintiffs claim that the notice must state the individual medical and vocational reasons for the finding of nondisability. The Secretary argues that the finding of nondisability is, in itself, a specific reason.

The Secretary states that there are "seventeen different reasons" why the plaintiffs might have been rejected, including:

1) failure to submit sufficient medical evidence;

2) failure to cooperate in submitting to medical examinations;

3) failure to follow prescribed treatments;

4) demonstrated ability to perform substantial gainful activity;

5) disability did not last or is not expected to last 12 months.

*Federal Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment* at 22–23, filed January 3, 1979. A different stock paragraph is included in the notice whenever any of these reasons are applicable.

A fundamental concept of administrative law is that an agency must follow its own regulation. *See United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *Vitarelli v. Seaton,* 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); *Service v. Dulles,* 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); *United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954). In this case, however, the regulations are ambiguous. The plaintiffs correctly argue

that the Secretary provides no individualized medical or vocational reasons for the finding of nondisability. In fact, each of the individual plaintiffs and petitioners for intervention received substantially the same notice although they were each denied benefits for different medical reasons. On the other hand, the Secretary points out that there are several different legal and factual reasons why a claimant might be denied benefits, and those reasons are set out in different stock paragraphs.

In trying to determine the meaning of the term "specific reasons," this Court is not free to fashion its own definition. When examining an administrative regulation, the Court must first look to the agency's interpretation of its own regulation. That interpretation is "the ultimate criterion, . . . which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945); *see United States v. Larionoff*, 431 U.S. 864, 872, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977); *Immigration & Naturalization Service v. Stanisic*, 395 U.S. 62, 72, 89 S.Ct. 1519, 23 L.Ed.2d 101 (1969); *Udall v. Tallman*, 380 U.S. 1, 16–17, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *Talley v. Mathews*, 550 F.2d 911 (4th Cir. 1977). This is especially true when the regulation is ambiguous. *See, e. g., Thorpe v. Housing Authority*, 393 U.S. 268, 276, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969).

This Court can certainly disregard an agency interpretation that is utterly inconsistent with its regulation. *See Talley v. Mathews, supra; Hart v. McLucas*, 535 F.2d 516 (9th Cir. 1976). However, it is equally true that the agency's interpretation need not be the most sensible or the most rational. It is sufficient that the agency's interpretation be reasonable and not plainly erroneous. *See, e. g., Belco Petroleum Corp. v. FERC*, 191 U.S.App.D.C. 157, 162, 589 F.2d 680, 685 (D.C. Cir. 1978);

*Floyd S. Pike Electrical Contractor, Inc. v. OSHRC*, 576 F.2d 72, 75 (5th Cir. 1978); *Lucas Coal Co. v. Interior Board of Mine Operations Appeals*, 522 F.2d 581, 584 (3d Cir. 1975); *Board of Directors & Officers, Forbes Federal Credit Union v. National Credit Union Administration*, 477 F.2d 777, 784 (10th Cir.), *cert. denied*, 414 U.S. 924, 94 S.Ct. 233, 38 L.Ed.2d 158 (1973); *Jets Services, Inc. v. Hoffman*, 420 F.Supp. 1300 (M.D.Fla.1976).

This Court recognizes that there are many advantages to providing unsuccessful claimants with the medical reasons for their rejection. Claimants who were erroneously rejected might be more likely to request a hearing to correct the error and get the benefits they are entitled to. Claimants who were properly rejected might be less likely to appeal from a decision that intelligently analyzes the medical facts of their individual cases. But it is not the function of this Court to question the wisdom of the Secretary's policy. The Court must defer to any interpretation that is not plainly erroneous or inconsistent with the regulation. While these reconsideration notices are not as specific as the plaintiffs would like, they do distinguish between various procedural and substantive reasons for rejecting an applicant. The Court concludes that the Secretary's interpretation is not plainly erroneous.

Having concluded that the plaintiffs do not have a valid claim under either the Constitution, the Social Security Act, or the regulations, the Court will enter a separate order granting summary judgment in favor of the Secretary.

### THE STATE DEFENDANT

The only reason the State defendant is in this case is because his department conducts the medical reviews and either sends out or causes to be sent out the notices that plaintiffs object to. Since the Court finds that the plaintiffs have no claim against the Secretary, they obviously have no claim against the State defendant.[5] The Court

---

5. There is also a serious question as to whether this Court has jurisdiction over the State defendant. *See Chapman v. Houston Welfare Rights Organization*, —— U.S. ——, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979). The Court, however, need not reach this issue.

will grant the State defendant's motion for summary judgment.