643 F.2d 995
 Letcher ADAMS and Claude Alston, individually and on behalf
of all others similarly situated, and Theodore A.
Wynn, Appellants,
v.
Patricia R. HARRIS, Secretary, Department of Health,
Education and Welfare; and David W. Hornbeck, Superintendent
of Schools, Maryland Department of Education, individually
and in their official capacities, Appellees.
 No. 79-1678.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 7, 1980.
Decided Feb. 27, 1981.
 
 Dennis W. Carroll, Jr., Baltimore, Md. (Peter M. D. Martin, Thomas W. Keech, Administrative Law Center, Legal Aid Bureau, Inc., Baltimore, Md., on brief), for appellants.
 John C. Hoyle, Dept. of Justice, Washington, D. C. (William Kanter, Linda Jan S. Pack, Civil Division, Dept. of Justice, Washington, D. C., Justin W. Williams, U. S. Atty., Alexandria, Va., Alice Daniel, Asst. Atty. Gen., Washington, D. C., on brief), for appellee Secretary of Health, Education and Welfare.
 Thomas E. Plank, Asst. Atty. Gen., Baltimore, Md. (Stephen H. Sachs, Atty. Gen. of Maryland, Baltimore, Md., on brief), for appellee Superintendent of Schools, Maryland Dept. of Ed.
 Before WINTER, WIDENER and SPROUSE, Circuit Judges.
 WIDENER, Circuit Judge:
 
 
 1
 This appeal arises from the denial of declaratory and injunctive relief sought by a plaintiff class challenging the adequacy of the notices sent to Social Security disability applicants denied benefits at the reconsideration stage of the administrative process. The district court found that the notice given was adequate and granted summary judgment for the defendants. Adams v. Califano, 474 F.Supp. 974 (D.Md.1979). We affirm.
 
 
 2
 Under both Title II and Title XVI of the Social Security Act,[1] a five step process is used for the processing of disability benefit claims. An applicant seeking disability benefits first files a claim with the local Social Security office. That office prepares a file containing the medical and work history of the claimant, which is forwarded to a State agency[2] (here a division of the Maryland State Department of Education). The State agency then makes the initial determination of disability under the Social Security Act. Its findings of fact and analysis are reported on Form SSA-831.[3] The Social Security Administration at the same time determines the insured status and income of the claimant. These two analyses are then combined and a notice of determination is sent to the claimant. If the claim is denied, the notice sets out the reasons for such a determination and informs the claimant that he has the right to reconsideration. 20 CFR §§ 404.907, 416.1404, 416.1409. If reconsideration is requested, the claims file is reexamined and any other evidence submitted is considered. 20 CFR §§ 404.914, 416.1415. If the claim is again denied, a Notice of Reconsideration Determination is sent to the claimant, stating the reasons for denial and informing the claimant that he has the right to request a hearing. 20 CFR §§ 404.915, 416.1422. The reasons provided in the notice are stated in stock paragraphs which provide standardized reasons for denial. A claimant who wishes to proceed further with his claim then requests a hearing and shortly thereafter, but no later than ten days before the hearing, receives a notice of the hearing that contains "a statement of the specific issues to be determined, and matters on which findings will be made and decision reached." 20 CFR §§ 404.923, 416.1433. The claimant is also advised that he or his representative may inspect the documentary evidence, and they may also inspect the file. The hearing before the administrative law judge is essentially a de novo one where the claimant can appear and present witnesses and evidence. 20 CFR §§ 404.924, 404.934, 416.1434, 416.1446. Following the hearing, the administrative law judge issues a formal decision containing findings of fact and the reasons for his determination. 20 CFR §§ 404.939, 416.1457. If the claimant is again denied benefits, he can appeal to the Appeals Council. 20 CFR §§ 404.945, 416.1461. If unsuccessful there, the claimant can then seek judicial review. 42 U.S.C. §§ 405(g) and 1383(c)(3).
 
 
 3
 Appellants are a class of claimants who seek disability benefits under either Title II, 42 U.S.C. § 401 et seq., or Title XVI, 42 U.S.C. § 1381 et seq. of the Social Security Act, and who have had or will have their claims reviewed by the Maryland Disability Determination Services Program or who were or will be Maryland residents when their reconsideration claim is considered, and have been or will be denied benefits at the reconsideration stage and have received or will receive a Notice of Reconsideration Determination from Social Security. 474 F.Supp. at 978-980. They brought this action challenging the adequacy of the notice of reconsideration decisions under the Fifth and Fourteenth Amendments to the United States Constitution, the Social Security Act, and the Department of Health, Education and Welfare's (now the Department of Health and Human Services) own regulations.
 
 
 4
 The notices of denial following reconsideration are composed of stock paragraphs that are used in various combinations to inform applicants of the determination of their claims. There are some 17 different paragraphs that are used. Although the stock paragraphs are more specific when dealing with denials resulting from procedural and like errors,[4] denials for other reasons do point to the reason for denial.
 
 
 5
 The following are representative of paragraphs for claims under Title II,[5] when the claimant, according to the instructions, is "not found to be disabled."
 
 
 6
 UPON RECEIPT OF YOUR REQUEST FOR RECONSIDERATION WE HAD YOUR CLAIM FOR DISABILITY INSURANCE BENEFITS INDEPENDENTLY REVIEWED BY A PHYSICIAN AND DISABILITY EXAMINER IN THE STATE AGENCY WHICH WORKS WITH US IN MAKING DISABILITY DETERMINATIONS. THE EVIDENCE IN YOUR CASE HAS BEEN THOROUGHLY EVALUATED; THIS INCLUDES THE MEDICAL EVIDENCE AND THE ADDITIONAL INFORMATION RECEIVED SINCE THE ORIGINAL DECISION. WE FIND THAT THE PREVIOUS DETERMINATION DENYING YOUR CLAIM WAS PROPER UNDER THE LAW.
 
 
 7
 TO BE CONSIDERED DISABLED, A PERSON MUST BE UNABLE TO PERFORM ANY SUBSTANTIAL GAINFUL WORK DUE TO A MEDICAL CONDITION WHICH HAS LASTED OR CAN BE EXPECTED TO LAST FOR A CONTINUOUS PERIOD OF AT LEAST 12 MONTHS. THE IMPAIRMENT MUST BE SO SEVERE AS TO PREVENT THE PERSON FROM WORKING NOT ONLY IN THE PERSON'S USUAL OCCUPATION BUT IN ANY OTHER SUBSTANTIAL GAINFUL WORK CONSIDERING AGE, EDUCATION, TRAINING, AND WORK EXPERIENCE. THIS CONDITION MUST BE DISABLING AT A TIME WHEN THE PERSON MEETS THE EARNINGS REQUIREMENT OF THE LAW.
 
 
 8
 Plaintiffs challenge the use of these stock paragraphs in the denial notices. They argue for the required use of a more detailed explanation such as exists on Form SSA-831 we have mentioned above. These stock paragraphs, they claim, are inadequate because they do not contain individualized medical or vocational reasons the claim was denied. Plaintiffs do not argue that the paragraphs are wrong, only that they are not specific enough.[6]
 
 
 9
 Plaintiffs contend that their due process rights have been violated as a result of inadequate notice. Asserting that they have a property interest as an applicant for Social Security benefits, appellants argue that they cannot make an intelligent decision regarding a request for a hearing nor adequately prepare for the hearing without the information on Form SSA-831. Therefore, they claim the notice is constitutionally inadequate.
 
 
 10
 We do not decide whether plaintiffs have a property interest protectable under the Constitution. Even if they do, they have shown no constitutional requirement that they be informed in the notice form with particularity of the medical and vocational reasons for denial of their disability benefits claims. The notice does advise them if their claim was denied on the merits, not for procedural deficiency. As the district court stated, the notice "does inform claimants of the broad reason for the denial on reconsideration. While the notice may not be helpful to claimants trying to decide whether to request a hearing, it does serve its limited constitutional purpose." 474 F.Supp. at 985. The notice must be reasonably calculated, under all circumstances, to apprise the claimants of the action taken and afford them an opportunity to present their objections. See Mullane v. Central Hanover Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). We think that requirement is met here.
 
 
 11
 We note in passing that any more detail could easily work to the disadvantage of applicants without legal representation. Under the present system, an applicant is not misled by the administrator's determination so that he may erroneously limit the evidence he presents to the administrative law judge if a hearing is requested. Since that hearing is essentially de novo, the applicant still has the burden of proving all elements of his case. Limiting the issues beforehand may lead the uncounseled applicant to think otherwise, while the only benefit a more detailed notice would confer would be to save a trip to the Social Security office in which the file is kept.
 
 
 12
 Plaintiffs also challenge the adequacy of the notice under 42 U.S.C. § 405(b) and 42 U.S.C. § 1383(c)(1). Both statutes require the Secretary to make findings of fact. There is no contention that the findings of fact are not made; rather, the argument goes that these findings must be included in the notice sent to the applicant. The statutes do not contain such a requirement. All that is required by the statute is that the notice be "reasonable," which requirement we think is met here.
 
 
 13
 Likewise, we find no merit to the contention that the Secretary's own regulations require such a notice. Plaintiffs argue that the requirement in 20 CFR §§ 404.915 and 416.1422 that the written notice give the "specific reasons" for denial requires an inclusion in the notice of findings of fact as to the individual medical and vocational reasons for each denial. As previously discussed, the denial notices do distinguish between basic reasons for denial of claims. In this connection, we should defer to an agency's interpretation of its own regulations, even if that interpretation differs from our own, unless it is plainly erroneous or inconsistent with the regulation. Bowles v. Seminole Rock Co., 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945); Talley v. Mathews, 550 F.2d 911, 919 (4th Cir. 1977). We find neither here. We agree with the district court that although the reasons given are not as specific as plaintiffs would like, they are consistent with the regulations.
 
 The judgment of the district court is
 
 14
 AFFIRMED.
 
 WINTER, Circuit Judge, dissenting:
 
 15
 The basic question that this appeal presents is whether a claimant for Social Security disability benefits whose claim is denied at the administrative level must be told something more than the mere fact that it was denied. I think that he should. I think that the Constitution, the statutes and the regulations, interpreted in the light of the underlying constitutional issue, require a greater disclosure than the Social Security Administration's computerized "stock paragraphs" now afford. From a contrary decision, I respectfully dissent.
 
 I.
 
 16
 The facts are set forth in the majority opinion and the opinion of the district court, Adams v. Califano, 474 F.Supp. 974 (D.Md.1979); hence, for my purposes, only a summary statement is required:
 
 
 17
 This is a class action and the plaintiff class is composed of approximately 7,000 Maryland residents per year who seek disability benefits under Titles II and XVI. The notice in question is one sent an applicant when his claim is denied at the reconsideration stage of the administrative process. When an adverse decision is made at the initial or at the reconsideration stage, the specific reasons for the decision are reduced to writing, but this written decision, known as Form SSA-831, containing a statement of the evidence, the findings of fact based on the evidence, and the rationale of the decision, is not furnished to an applicant. Instead the applicant receives a form letter composed of computerized "stock paragraphs" setting out only the statutory or regulatory standards that were applied and telling him that he failed to meet them.[1] The form letter does not refer to the specific medical or vocational reasons for denying the disability claim although those reasons may be available to the claimant or his representative if he requests a hearing before an administrative law judge within sixty days from the date on which he receives the notice.[2] If a claimant requests a hearing, he is given at least ten days notice of the time and place. But again the notice will not contain any specific or individualized reasons why his claim was twice previously denied.
 
 
 18
 In my view, the notice which is currently being provided most disability claimants essentially states nothing more than "you lost your case." There are some denials of disability where the "stock paragraphs" given the claimant adequately set forth the decision on the sole issue in the case,[3] but the usual claim for disability benefits which is denied on its merits stands in a different posture. Such a claim may be denied because the claimant is capable of performing his usual work, or his impairment is remediable, or even if incapacitated from engaging in his usual occupation, he is capable of doing other work which exists in the national economy. Thus, to a disability claimant, whose claim is decided on one of these grounds, a computerized recitation of the statutory definition of disability tells him nothing at all.II.
 
 
 19
 Ordinarily in a case in which there is a claim of denial of a right secured by the Constitution, a statute and regulations, the appropriate judicial approach is to consider the meaning of the regulations, the statute and the Constitution in that order, because it is a firmly entrenched principle that a court ought not to decide a constitutional issue except when a decision is inescapable. Califano v. Yamasaki, 442 U.S. 682, 692-93, 99 S.Ct. 2545, 2553, 61 L.Ed.2d 176 (1979). If a case can be resolved in a claimant's favor on statutory grounds, the basis of decision should go no further.
 
 
 20
 This is not the ordinary case in which that principle of judicial restraint may be employed. Both the regulation and the statute arguably are satisfied by the form notice which is given. At the same time, they can be interpreted to require the giving of notice of greater specificity; and since it is a familiar canon of statutory construction that an ambiguous statute should be interpreted to avoid a constitutional issue, Crowell v. Benson, 285 U.S. 22, 65, 52 S.Ct. 285, 298, 76 L.Ed. 598 (1932), I think it necessary to examine first claimants' constitutional issue. I find it one of sufficient substance to hold either that the regulation and statute should be interpreted to require notice of greater specificity, or that claimants are entitled to notice of greater specificity as a matter of constitutional right.
 
 
 21
 A. The Property Interest.
 
 
 22
 Although the case law on this point is not altogether clear, I think that applicants for Social Security benefits have a property interest cognizable under the due process clause of the Constitution. The district court found such an interest in this case, 474 F.Supp. at 981, and several other lower court decisions, including that of a three-judge district court in this circuit, Randolph v. United States, 274 F.Supp. 200, 203 (M.D.N.C.1967), aff'd, 389 U.S. 570, 88 S.Ct. 695, 19 L.Ed.2d 785 (1968), have reached that conclusion. See also White v. Mathews, 434 F.Supp. 1252, 1260-61 (D.Conn.1976), aff'd on other grounds, 559 F.2d 852 (2 Cir. 1977), cert. denied, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978). But see Gendron v. Saxbe, 389 F.Supp. 1303, 1305-06 (C.D.Cal.) (three-judge ct.), aff'd sub nom. Gendron v. Levi, 423 U.S. 802, 96 S.Ct. 9, 46 L.Ed.2d 23 (1975).[4]
 
 
 23
 The Supreme Court's pronouncements in this area are not conclusive, but they tend to support the plaintiffs' contention that their claim of entitlement to Social Security benefits is sufficient to invoke the protections of the due process clause. In Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), for example, the Court stated:
 
 
 24
 We may accept the propositions advanced by the claimant, some of them long established, that procedural due process is applicable to the adjudicative administrative proceeding involving "the differing rules of fair play, which through the years, have become associated with differing types of proceedings," that "the 'right' to Social Security benefits is in one sense 'earned,' "; and that the "extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be 'condemned to suffer grievous loss' .... Accordingly ... 'consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.' " (citations omitted).
 
 
 25
 Perales involved an application for Social Security disability benefits rather than the termination of such benefits. One year later, in Board of Regents v. Roth, 408 U.S. 564, 576-78, 92 S.Ct. 2701, 2708, 33 L.Ed.2d 548 (1972), the Court reviewed the procedural protection of property afforded by the fourteenth amendment from a more general perspective. Although Roth speaks of the security of interests that a person "has already acquired" in specific benefits, 408 U.S. at 576, 92 S.Ct. at 2708, and explains that to have a property interest in benefits a person must have "more than a unilateral expectation" of that benefit, id. at 577, 92 S.Ct. at 2709, it goes on to suggest that the required "legitimate claim of entitlement" may be grounded in a statute defining eligibility, irrespective of whether the benefit claim arises in the context of an initial application or the termination of benefits which have been the subject of a prior determination of entitlement, id. Most recently, in Lavine v. Milne, 424 U.S. 577, 96 S.Ct. 1010, 47 L.Ed.2d 249 (1976), the Court may have intimated that applicants for statutory (state welfare) benefits are entitled to "less process" than those already receiving benefits, but plainly assumed in its analysis of the available state procedures that such applicants possess an interest protected under the due process clause of the fourteenth amendment.
 
 
 26
 B. What Process is Due?
 
 
 27
 Once it is determined that there is an interest protected by the due process clause, the inquiry turns to the nature of the process that is "due." The parties agree, as do I, that the controlling authority is Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). In that case, the Court first noted that due process is a flexible concept which calls for procedural protection as the particular situation demands, and then explained:
 
 
 28
 More precisely, our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
 
 
 29
 Id. at 334-35, 96 S.Ct. at 902.
 
 
 30
 The arguments advanced by the parties with respect to each of the Mathews v. Eldridge factors persuade me that the failure to give more specific notice to a disability claimant probably results in a denial of due process of law. Although a disability claimant's interest in receiving a more detailed notice, such as that which would be provided by including a copy of the initial written decision (the SSA-831 form),[5] is diminished by the availability of a de novo hearing before an administrative law judge, the corresponding burden on the government is extremely slight, and, as the district court explained, the value of the additional safeguards (both to the plaintiffs and to the government) is significant.[6] The giving of specific, individualized notice to unsuccessful applicants would enable them to make a more intelligent decision regarding a hearing and might be expected both to decrease the incidence of frivolous appeals and to ensure that fewer erroneous determinations are left standing.[7] Especially is this so when it is remembered that the large majority of claimants neither have counsel nor the means to employ counsel. In addition, it would be expected that the quality of evidence presented at hearings would be improved if claimants knew further in advance the specific reasons for the denial of their claims.[8] The risk of erroneous determination at the initial administrative determination stage is apparently great (approximately 50 percent of the reconsidered determinations are reversed after hearing), and the value of the requested procedure would seem to lie both in reducing erroneous denials and in improving the hearing process.[9] Conversely, the administrative and fiscal burden on the government would be slight, especially if the notice were provided by furnishing the SSA-831 form. Although the Secretary argues that the forms would have to be revised and personnel retrained if the plaintiffs are granted the relief they seek, no evidence of record supports these claims, and they seem insubstantial if the forms produced under current procedures and retained in the claimant's file are mailed along with the notice of denial of a reconsidered claim.
 
 
 31
 In summary, an analysis of the elements articulated in Mathews v. Eldridge leads me to conclude that plaintiffs, at a minimum, have a substantial claim of denial of constitutional right, if, indeed, they are not entitled to prevail solely on constitutional grounds. I therefore turn to a consideration of the statute and the regulations in light of this conclusion.
 
 III.
 
 32
 The statutes with which we are concerned are §§ 205(b) and 1631(c)(1) of the Act, 42 U.S.C. §§ 405(b) and 1383(c)(1), respectively. For present purposes, the relevant portions of each are identical and it is therefore necessary only to quote the pertinent language of § 205(b):
 
 
 33
 The Secretary is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under this subchapter. Upon request by any such individual ... who makes a showing in writing that his or her rights may be prejudiced by any decision the Secretary has rendered, he shall give such applicant ... reasonable notice and opportunity for a hearing with respect to such decision, and, if a hearing is held, shall, on the basis of evidence adduced at the hearing, affirm, modify, or reverse his findings of fact and such decision.
 
 
 34
 As the district court recognized, 474 F.Supp. at 985-86, the statute requires the Secretary to make findings of fact prior to the hearing stage. It is true that the statute nowhere explicitly states that these findings, or their substance, must be served on the unsuccessful claimant, but it does not follow, as the district court ruled, that the giving of such notice is not implicit in the statutory language. To me, it is simply inconsistent with fundamental assumptions grounded in the history of procedures employed by courts and other administrative agencies to believe that Congress directed the Secretary to make findings of fact and then to withhold those findings from the very person whose rights they determine. At best, I believe, the Secretary might argue that the statute is ambiguous.[10] Under such circumstances, it should be interpreted so as to avoid the substantial constitutional problem discussed in Part II of this opinion.
 
 
 35
 Whatever ambiguities there are in the statute with respect to the giving of notice would appear to be resolved in the Secretary's own regulations providing that notice of a reconsidered decision shall state the "specific reasons therefor" (emphasis added). In fact there are two regulations, identical in form, dealing with Title II and Title XVI claims. 20 C.F.R. §§ 404.915 and 416.1422. Section 404.915 is typical:
 
 
 36
 Written notice of the reconsidered determination shall be mailed to the parties at their last known addresses. The reconsidered determination shall state the specific reasons therefor and inform the parties of their right to a hearing ... or, if appropriate, the requirements for use of the expedited appeals process ... (emphasis added).
 
 
 37
 It seems to me that the plain and ordinary meaning of "state the specific reasons therefor" requires more than merely stating that a disability claimant has failed in some unspecified manner to meet the statutory requirements for disability. In the case of an unsuccessful disability claimant whose claim may have been denied for at least one of three possible reasons, I think that the plain and ordinary meaning requires that the actual basis of the adverse administrative determination be disclosed. And, of course, as the district court recognized, an administrative agency must follow its own regulation.
 
 
 38
 The district court ruled, however, that the Secretary's determination that the regulation was satisfied by the notice which was given constituted an administrative determination which was binding on it unless the interpretation was "plainly erroneous or inconsistent with the regulation." 474 F.Supp. 987. To my mind, the Secretary's interpretation is "plainly erroneous." I think that it flies in the teeth of the language of the regulation; and when the substantial doubt of the constitutionality of the Secretary's interpretation is considered, I have no doubt but that the regulation should be interpreted to require the giving of the notice that plaintiffs seek, or its substantial equivalent.
 
 
 39
 I would reverse the judgment of the district court and direct it to give the relief prayed, or its substantial equivalent. I would be remiss, however, if I did not call attention to the fact that the need for this relief will no longer exist after July 1, 1981. P.L. 96-265, 94 Stat. 441, enacted June 9, 1980 amends both §§ 205(b) and 1631(c)(1) of the Act by adding language to require that any decision of the Secretary
 
 
 40
 which involves a determination of disability and which is in whole or in part unfavorable to (the claimant) shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Secretary's determination and the reason or reasons upon which it is based.
 
 
 41
 Of course, the new language does not in so many words require that the Secretary's statement of the case, etc. be served on the unsuccessful disability claimant, but it is clear from the legislative history that Congress intends that this be done.[11]
 
 
 42
 Moreover, if as the Secretary claims the typical Form SSA-831 contains "cryptic or abbreviated language" and is not "fully intelligible" on its face, then the statutory amendment requires even more of the Secretary than the simple mailing of SSA-831. It requires a genuine effort to communicate useful information in a comprehensible fashion.
 
 
 
 [1]
 Title II, 42 U.S.C. § 401 et seq. and Title XVI, 42 U.S.C. § 1381 et seq. Both provide the same standard for proving disability, 42 U.S.C. §§ 423(d) and 1382c(a)(3). Eligibility under Title II is based upon the applicant's past Social Security earning record, 42 U.S.C. § 423(c), while eligibility under Title XVI is based on the applicant's current income. 42 U.S.C. § 1382(a)
 
 
 [2]
 The Secretary is authorized by Congress to contract with State agencies to perform the disability determinations under both titles. 42 U.S.C. §§ 421 and 1383b
 
 
 [3]
 Form SSA-831 contains detailed reasons for the disability determination. This form is not sent to the applicant with his reconsideration determination notice. It is, however, part of his claims file and may be reviewed by the applicant or his representative prior to the hearing before the administrative law judge. Appellants contend that inclusion of this form with the reconsideration notice would satisfy their claims
 
 
 [4]
 For example, there are stock paragraphs for failure to submit to a requested medical examination and for the onset of disability after the date the applicant was last insured
 
 
 [5]
 The following is representative of the language used for claims under Title XVI when, according to the instructions, there is "lack of severity."
 TO GET SUPPLEMENTAL SECURITY INCOME DISABILITY CHECKS, YOU MUST BE UNABLE TO DO ANY SUBSTANTIAL GAINFUL WORK BECAUSE OF A MEDICAL CONDITION WHICH HAS LASTED OR WILL LAST AT LEAST 12 MONTHS IN A ROW. YOUR AGE, EDUCATION, TRAINING, AND PAST WORK EXPERIENCE ARE ALSO CONSIDERED IN THIS DECISION.
 WE HAVE JUST FINISHED ANOTHER CAREFUL REVIEW OF YOUR CASE. WE LOOKED AGAIN AT ALL YOUR MEDICAL RECORDS AND CONSIDERED EVERYTHING YOU TOLD US ABOUT YOUR CONDITION. ALL OF THE EVIDENCE IN YOUR CASE SHOWS YOU STILL DO NOT MEET THE DISABILITY REQUIREMENTS OF THE LAW. BECAUSE OF THIS, SUPPLEMENTAL SECURITY INCOME CHECKS CANNOT BE SENT TO YOU.
 
 
 [6]
 The plaintiffs do contend that the assertion in the notices that the agency has carefully considered all the evidence in the file is not accurate, but take no issue as to that part of the form of the notice
 
 
 [1]
 Typical of the notices are those received by the named plaintiff, Letcher Adams. Adams was a fifty-five-year-old welder and burner in the Baltimore shipyards when he developed a disabling chronic lung condition. His claim for disability benefits was administratively denied on the ground that the medical evidence showed that "(a)lthough the claimant is precluded from returning to his past customary work as an arc welder ... (he retains) the functional capacity for a restrictive range of medium work such as boilermaker welder, welder atomic and welder gun ...."
 On initial denial, the notice with respect to the reasons for denying his claim said only:
 After a careful review of your case, it has been determined that you are not eligible or the individual named above, on whose behalf you applied, is not eligible to receive supplemental security income payments under the provision of Title XVI of the Social Security Act.
 In order to get supplemental security income disability checks, you must be unable to do any substantial gainful work because of a medical condition which has lasted or will last at least 12 months in a row. Your age, education, training, and past work experience are also considered in making this decision. The evidence in your case shows that you do not meet the disability requirements of the law.
 Of course, the notice also advised him of his right to reconsideration at the administrative level. He exercised that right; and when his claim was denied a second time, he was only told with respect to the basis of denial:
 Upon receipt of your request for reconsideration we had your claim for disability insurance benefits independently reviewed by a physician and disability examiner in the state agency which works with us in making disability determinations. The evidence in your case has been thoroughly evaluated; this includes the medical evidence and the additional information received since the original decision. We find that the previous determination denying your claim was proper under the law.
 To be considered disabled, a person must be unable to perform any substantial gainful work due to a medical condition which has lasted or can be expected to last for a continuous period of at least 12 months. The impairment must be so severe as to prevent the person from working not only in the person's usual occupation but in any other substantial gainful work considering age, education, training, and work experience. This condition must be disabling at a time when the person meets the earnings requirement of the law.
 
 
 [2]
 Often the availability of this information is more illusory than real. First, in the District of Maryland, whatever information is available is available only at Towson, Maryland, an unincorporated town approximately six miles north of the Baltimore City limit. By the terms of the manual governing administration of the program, a claimant, if he seeks the information himself, may only obtain a "summary" of the medical information "in such detail as is consistent with proper and efficient administration of the ... program." He will be denied information that may be "disturbing or embarrassing" to him or to the source from which it was obtained. Thus if he has been found to be a malingerer, suffering from a neuropsychiatric disorder, a venereal disease or a malignancy, the claimant will be refused that information even though it may form the basis for denial of benefits to him
 An authorized representative of a claimant is given greater access to information but there are substantial roadblocks even in his quest. If the representative is an attorney, he may travel to the Social Security Administration office, examine the medical evidence and make notes. Should he seek to see the medical evidence, for the purpose of assisting the claimant, while the case is in progress, he is to be told that "permitting him to review the medical evidence can cause a delay in the determination, which may, in any event be favorable." Should the attorney persist (and presumably run the risk of a delay), he will be given the discovery that he seeks.
 
 
 [3]
 Examples are (1) the failure to follow prescribed treatment, (2) the failure to cooperate in attending a consultative examination, (3) the failure to submit medical evidence, (4) where the disability is not expected to last twelve months, (5) where the disability did not last twelve months and (6) where the claimant is actually engaging in substantial gainful activity. Disability claimants who do not fall into one of these narrow categories receive the general notice which is the subject of this litigation. In her brief the Secretary asserts that in fiscal 1978 nearly 12,000 notices at the reconsideration stage were issued in Maryland and that "perhaps the most common reason" assigned for denial of benefits is that assailed by plaintiffs
 
 
 [4]
 While Gendron reached a result contrary to the plaintiffs' contention here, it did so on a dual basis a property interest rationale and the discretionary power of Congress in dealing with veterans' affairs. Its analysis of the property interest question is not particularly persuasive, and the Supreme Court's summary affirmance cannot realistically be interpreted as approval of that analysis. Mandel v. Bradley, 432 U.S. 173, 97 S.Ct. 2238, 53 L.Ed.2d 199 (1977)
 
 
 [5]
 I express no view as to whether the actual SSA-831 form must be furnished to an unsuccessful claimant. My thesis is simply that greater notice than that presently given is required. The paternalistic approach of withholding from a claimant information that is "disturbing or embarrassing", see n.2, supra, does not impress me when a claimant's right to the economic benefits to which he may be entitled by law is at stake, especially when the claimant may obtain access to such information in any event if he presses his claim to a hearing before an administrative law judge and finds a representative with the persistence to gain access to his file. See note 2, supra. The suggestion that additional information would serve only to mislead claimants is likewise unpersuasive in light of findings to the contrary in a comprehensive study of the application process. See J. Mashaw, Report to the Grants and Benefits Committee, Administrative Conference of the United States, on the Social Security Hearings and Appeals Process (1978), p. 29. (Hereinafter "Mashaw, Administrative Conference Report")
 
 
 [6]
 The specific findings of the district court on this point are:
 This Court recognizes that there are many advantages to providing unsuccessful claimants with the medical reasons for their rejection. Claimants who were erroneously rejected might be more likely to request a hearing to correct the error and get benefits they are entitled to. Claimants who were properly rejected might be less likely to appeal from a decision that intelligently analyzes the medical facts of their individual cases.
 
 
 [474]
 F.Supp. at 987. The district court, however, then concluded that under the law it could not disturb the Secretary's policy to withhold information
 
 
 [7]
 Current disclosure procedures do not facilitate informed decisions on whether to appeal in the first instance. According to studies cited by the plaintiffs, many unsuccessful applicants request hearings simply to learn why their claims were denied
 
 
 [8]
 Although claimants currently have limited access to their files after a hearing is requested and granted, a study shows that the time normally available between gaining access to the file and the hearing is insufficient to develop medical evidence fully. See Mashaw, Administrative Conference Report, supra, at 29. The fact that access to the claimant's file can technically be had through an attorney prior to appealing seems relatively insignificant in view of the procedural difficulty of pursuing this course. See n.2, supra
 In light of the increasing frequency with which this court is forced to remand disability cases because of the failure of the administrative law judge to adequately develop the facts at the hearing stage, see e. g., Walker v. Harris, 642 F.2d 712 (4 Cir. 1981); Sims v. Harris, 631 F.2d 26 (4 Cir. 1980); Marsh v. Harris, 632 F.2d 296 (4 Cir. 1980), one would think that the Secretary would be willing, if not anxious, to offer a claimant more complete information at the reconsideration stage for the purpose of focusing and improving his presentation before the administrative law judge. I agree with the Secretary's contention that the disability determination process was designed by Congress to be non-adversarial. I would emphasize that the Social Security Administration misconceives its role when it casts itself as adversary to the claimant by erecting unnecessary barriers to the truth-finding process.
 
 
 [9]
 See generally, Center for Administrative Justice, Final Report: Study of the Social Security Administration Hearing System (October, 1977) at 93; Mashaw, Administrative Conference Report, supra, at 4, 21, 28, 29; Final Report: Service Delivery Assessment of SSA Disability Programs (May 19, 1978) pp. 8, 9, 13
 
 
 [10]
 The statute does say that, upon request, the Secretary shall give the claimant notice "with respect to such decision." It is difficult to assume, especially with respect to a disability claimant whose claim has been denied for any one of at least three reasons, that the giving of notice with respect to a decision, required by the statute to be made on findings of fact, would not include a disclosure of how the facts were found against the claimant in the pertinent area
 
 
 [11]
 Senate Report No. 96-408 (November 8, 1979) in speaking of the amendment to §§ 205(b) and 1631(c)(1) says:
 The committee bill includes a number of other provisions intended to strengthen administrative practices particularly in regard to the handling of initial claims and cases denied which are under appeal. These provisions would:
 
 
 [1]
 Require that notices of disability denial be provided to claimants expressed in language understandable to the claimant, which include a discussion of the evidence of record and the reasons why the disability claim is denied
 1980 U.S.Code Cong. & Admin.News, 96th Cong., 2d Sess., 2481, 2488 (emphasis added).
 The Senate version of the amendment to these sections was the one finally enacted. House Conf. Report No. 96-944 (May 13, 1980), U.S.Code Cong. & Admin.News, 96th Cong., 2d Sess., 2481, 2610 (1980).