Barry D. SHAW, individually and on behalf of all other persons similarly situated, Plaintiff-Appellant,

v.

Ruben A. VALDEZ, in his capacity as Executive Director of the Colorado State Department of Labor and Employment; John Kezer, in his capacity as Director of the Colorado Division of Employment and Training, and Mike L. Baca, Gary D. Rose, and John T. McDonald, in their capacities as Commissioners of the Industrial Commission of the State of Colorado, (Ex-officio Unemployment Compensation Commission of Colorado), Defendants-Appellees.

No. 84–2791.

United States Court of Appeals, Tenth Circuit.

May 26, 1987.

**966**

R. Eric Solem, Atty., Pikes Peak Legal Services, Colorado Springs, Colo. (Daniel M. Taubman, Atty., Colorado Coalition of Legal Services Programs, Denver, Colo., was also on brief), for plaintiff-appellant.

Christa D. Taylor, Asst. Atty. Gen., Denver, Colo. (Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., and Richard H. Forman, Sol. Gen., Denver, Colo., were also on brief), for defendants-appellees.

Jordan Rossen, Gen. Counsel, M. Jay Whitman, Associate Gen. Counsel and Richard W. McHugh, Asst. Gen. Counsel, Intern. Union, UAW, Detroit, Mich., for amicus curiae, Intern. Union, UAW.

Before HOLLOWAY, Chief Judge, and LOGAN, Circuit Judge, and BRETT,* District Judge.

HOLLOWAY, Chief Judge.

■ Plaintiff Barry Shaw brought this action against the Executive Director of the Colorado Department of Labor and Employment, the Director of the Colorado Division of Employment and Training, and three members of the Colorado Industrial Commission.[1] In his first amended complaint for declaratory and injunctive relief Shaw alleged that Colorado's procedure for administering unemployment compensation benefits violated the Fourteenth Amendment's Due Process Clause and the "fair hearing" requirement of 42 U.S.C. § 503(a)(3), due to lack of adequate notice of the issues to be tried.[2]

In his Memorandum Opinion and Order, the district judge found that entitlement to unemployment compensation is a "sufficient interest to require some due process protection." Under the 3-part test of *Mathews v. Eldridge,* 424 U.S. 319, 334-35, 96 S.Ct. 893, 902-03, 47 L.Ed.2d 18 (1976), the court held that the private interest in receiving unemployment benefits is significant and can be a compelling need. The court then focused on the risk of an erroneous decision and the governmental cost of

* The Honorable Thomas R. Brett, United States District Judge for the Northern District of Oklahoma, sitting by designation.

1. The complaint was filed as a class action on behalf of certain other Colorado residents "[w]ho have been denied unemployment compensation benefits or are threatened with denial of unemployment compensation benefits without adequate advance notice of the issues to be raised at their hearings." I R. 79. The district court, however, did not rule on the motion for class certification, and the proper outcome of that motion is not at issue in this appeal.

2. The statutory provision appears in 42 U.S.C. § 503(a)(3), reading as follows:

    The Secretary of Labor shall make no certification for payment to any State unless he finds that the law of such State, approved by the Secretary of Labor under the Federal Unemployment Tax Act, includes provision for—

    \*    \*    \*    \*    \*    \*

    (3) Opportunity for a fair hearing, before an impartial tribunal, for all individuals whose claims for unemployment compensation are denied....

    Because of the way the statute is structured, we have considered the question whether a private cause of action is available to enforce the "fair hearing" requirement, although no issue is presented on this point to us. We conclude that a private cause of action is available in this case. *See Jenkins v. Bowling,* 691 F.2d 1225, 1228 (7th Cir.1982); *Brewer v. Cantrell,* 622 F.Supp. 1320, 1322-23 (W.D.Va.1985), *aff'd without published opinion,* 796 F.2d 472 (4th Cir.1986).

providing the type of notice the plaintiff contends is required.

As to the risk of an erroneous decision, the court found that from a reasonable reading of the notice, all issues concerning the reasons for termination of employment could be considered and that it was not unreasonable to expect a claimant or employer to be present with appropriate proof; and that assuming the pleaded facts to be true, the employee was not unfairly disadvantaged. As to the governmental cost factor, the judge noted the volume of appeals as set out in the plaintiff's motion and memorandum for class certification— for example, 1,449 appeals filed for hearings in December 1983—and said that such volume required expeditious proceedings. The court also pointed out that no federal claim is stated because of the availability provided by the Colorado statutes of judicial review of Industrial Commission decisions which can correct substantive mistakes in the notice and hearing.

The district judge concluded that no claim for relief was stated and dismissed the complaint. This appeal followed.

# I.

## The factual background

### A.

### Colorado's administrative procedure for reviewing unemployment compensation claims

The federal unemployment compensation program is implemented and administered by the states. 42 U.S.C. § 501 et seq. (1982). Colorado's program is initiated when an applicant files a written claim at one of the public employment offices located throughout the State. 7 Code of Colo. Regs. 2.1.2. The Division of Employment and Training (the Division) then notifies the employer of the claim and designates a deputy to make a preliminary decision regarding the applicant's eligibility for benefits. Colo.Rev.Stat. § 8–74–102 (1986). If the claim is disputed, either party can obtain a hearing by filing an appeal with the Division. Colo.Rev.Stat. § 8–74–103 (1986); 7 Code of Colo.Regs. 11.2.3. At that point,

the Division will notify both parties of the appeal, advising them of the statutory sections cited by the deputy.

The notice must specify the time and place of the hearing, but need not list the specific issues to be raised. 7 Code of Colo.Regs. 11.2.4. Indeed, the hearing officer can inquire into "any issue relevant to the disputed claim." Colo.Rev.Stat. § 8–74–103(1) (1986); see 7 Code of Colo.Regs. 11.2.9 ("all relevant issues shall be considered and passed upon" by the hearing officer). After the hearing officer makes his decision, the parties can appeal to the Industrial Commission and, eventually, to the Colorado courts. Colo.Rev.Stat. §§ 8–74–104, 8–74–107 (1986); see also 7 Code of Colo.Regs. 11.2.15.

### B.

### Plaintiff Shaw's allegations regarding his experience with the Colorado procedure

The first amended complaint alleges the following facts, which we must accept as true in light of the dismissal under Rule 12(b)(6), F.R.Civ.P.:

After being discharged by Merritt Packing and Crate Services, Inc., Shaw applied for unemployment benefits at a local job service center. The employer protested the claim, advising the Division that Shaw had been discharged because of "undependable performance," "incomplete paperwork," and "poor attitude." I R. 85. However, the employer did not send Shaw a copy of this letter or advise him of the reasons for his discharge. I R. 80.

The Division designated Deputy Quaranto to review the claim. The Deputy found Shaw eligible for a full award of benefits, concluding that he had been discharged because of a physical inability to perform his job as a furniture handler. I R. 80–81, 86, 89–90. The employer appealed to the Division, stating only that it "[disagreed] with the deputy's decision." I R. 81, 87. The Division sent Shaw a "Notice of Hearing Before a Referee," which stated:

A hearing before a Referee of the Colorado Division of Employment is conducted to determine why the employee was separated from his job and whether he is entitled to, or is qualified for benefits. All issues and factual matters affecting claimant's eligibility and qualifications for benefits will be heard under Chapter 8 of the Colorado Revised Statutes of 1973, as amended.

I R. 81, 88. This notice was issued pursuant to 7 Code of Colo.Regs. 11.2.3. and 11.2.4., which required only that the "time and place" of the hearing be stated. This type of a general statement as to issues and factual matters has been approved in Colorado and appears to be the State practice. *See, e.g., Ward v. Industrial Commission,* 699 P.2d 960, 969 (Colo.1985); *Yellow Front Stores, Inc. v. Industrial Commission,* 694 P.2d 882, 884 (Colo.Ct. App.1985); *Marlin Oil Co. v. Industrial Commission,* 641 P.2d 312, 313 (Colo.Ct. App.1982); *Anderson v. Industrial Commission,* 29 Colo.App. 263, 482 P.2d 403, 405 (1971).

The hearing was held on September 8, 1983, before Referee Bugg. Shaw appeared *pro se,* having no representation. The only two witnesses were Shaw and his former manager, John Runningen. When the employer's testimony was given, it went beyond the ground of discharge mentioned to Shaw when he was terminated, namely that "his work performance was slow." I R. 80. Runningen testified that Shaw had been discharged because he was undependable and slow, that he also caused dissension among other workers, that he failed to complete necessary paperwork, and that he failed to properly load all of the furniture on certain assignments. I R. 81, 91–92, 93, 97–98. The Referee reversed the Deputy's decision that Shaw was entitled to a full award, concluding that Shaw was discharged for failure to meet job performance standards; that although Shaw experienced back problems, those physical problems should have no effect on his abili-

ty to complete the required paperwork accurately or make certain that his truck was properly loaded with supplies before he left the premises on a job. I R. 121. On these conclusions the Referee reversed the Deputy's decision and denied Shaw all benefits attributable to the employer or 25 times his weekly benefit, whichever was less, *inter alia.*[3] After an unsuccessful appeal to the Industrial Commission, Shaw brought this suit in federal court. I R. 82, 122.

## II.

### The "fair hearing" requirement

In reviewing a dismissal for failure to state a claim, we must accept as true the plaintiff's well-pleaded factual allegations and all reasonable inferences must be indulged in favor of the plaintiff. *Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir.1984). Dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Schoultz v. Monfort of Colorado, Inc.,* 754 F.2d 318, 321 (10th Cir.1985) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)), *cert. denied,* — U.S. —, 106 S.Ct. 1259, 89 L.Ed.2d 569 (1986). Viewing the complaint in this light, we conclude that the district court erred in dismissing for failure to state a federal claim. We begin our inquiry by turning to the statutory issue arising from the facts as pleaded, which is whether Colorado's notice procedure deprived Shaw of a "fair hearing" within the meaning of the Social Security Act, 42 U.S.C. § 503(a)(3) (1982). We hold that it did.

■ As the Supreme Court has said, "[i]t goes without saying that the requirements of a fair hearing include notice of the claims of the opposing party and an opportunity to meet them." *FTC v. National Lead Co.,* 352 U.S. 419, 427, 77 S.Ct. 502, 508, 1 L.Ed.2d 438 (1957); *see also Goldberg v. Kelly,* 397 U.S. 254, 267–68, 90

3. The Referee relied on Colo.Rev.Stat. § 8–73–108(9)(a)(XX) (1983 supp.) (recodified in 1984 at § 8–73–108(5)(e)(XX)). That statute provides for a reduction of benefits if the claimant was discharged for "excessive tardiness or absenteeism, ... or failure to meet established job performance or other defined standards."

S.Ct. 1011, 1020–21, 25 L.Ed.2d 287 (1970). We think the Colorado procedures, as they are framed by the complaint, failed to provide such notice. As noted, the notice sent to Shaw gave only a broad unspecified statement that "all issues and factual matters affecting claimant's eligibility and qualifications for benefits will be heard...." Technically, of course, this notice to Shaw covered all issues relating to his termination and eligibility for benefits.

However, since Shaw never received the employer's protest letter, he was faced with the virtually impossible task of preparing for *all issues* that might arise under Colorado's complex statutory scheme. For example, to prepare for the discharge issue alone, Shaw would have had to conduct factual research into more than twenty categories of partial or total disqualification. *See* Colo.Rev.Stat. § 8–73–108(9)(a) (1983 supp.) (recodified in 1984 at § 8–73–108(5)(e)). Moreover, he would have had to examine fifteen statutory subsections providing for a full award. Colo.Rev.Stat. § 8–73–108(4) (1986). Clearly, the generic

notice provided Shaw was, in substance, no notice at all. *See Adams v. Harris,* 643 F.2d 995, 1000 (4th Cir.1981) (Winter, J., dissenting).[4] Furthermore, Shaw alleges that the employer's only explanation for the discharge, prior to the claim for benefits, was that "his work performance was slow." I R. 80.

■ The defendants argue, however, that Shaw could have obtained notice of the allegations by obtaining a copy of the employer's protest letter through discovery. That suggestion does not cure the defect in Colorado's notice procedures. Under Colorado law, a claimant can seek discovery prior to his hearing only if he is able to make a showing of "necessity" to the satisfaction of the Chief Appeals Referee or his designee.[5] 7 Code of Colo.Regs. 11.2.8. However, even if Shaw had made such a showing and received a copy of the protest letter, he still would not have known about all of the employer's allegations. The letter alleged only: "1) undependable performance; 2) incomplete paperwork; and 3) poor attitude." I R. 85.[6] The hearing,

---

**4.** We note that the United States Department of Labor has issued elaborate guidelines for states to observe in conducting their hearings regarding unemployment benefits. In those guidelines, the Department warns states against turning their hearings into "fishing expedition[s] to seek out new issues." New issues can be raised, but only if they are "germane to the appealed issue." If they are not, "the Referee should advise both parties of the new issue and their right to an adjournment so that they can adequately prepare for it." U.S. Department of Labor, *A Guide to Unemployment Insurance Benefit Appeals: Principles and Procedures* 10 (1970).

Colorado's procedures violate these guidelines by allowing the hearing officer to inquire into any issue regarding the claimant's eligibility for benefits. *See Yellow Front Stores, Inc. v. Industrial Commission,* 694 P.2d 882, 884 (Colo.Ct. App.1985); *Marlin Oil Co. v. Industrial Commission,* 641 P.2d 312, 313 (Colo.Ct.App.1982); *Anderson v. Industrial Commission,* 29 Colo. App. 263, 482 P.2d 403, 405 (1971).

**5.** The defendants argue that Shaw had a statutory right to discovery under Colo.Rev.Stat. § 8–72–107 (1986). That section states in pertinent part:

Each employing unit shall keep *true and accurate work records,* containing such information as the division may prescribe.... Any interested party or his authorized representative, in preparation for and prior to any

hearing on a claim governed by articles 70 to 82 of this title, shall be entitled to examine and, upon the payment of a reasonable fee to the division, obtain a copy of any materials contained in *such records* to the extent necessary for proper presentation of his position at the hearing. (Emphasis added)

It is not at all clear, however, whether Shaw would have benefitted by this discovery tool after making a showing of "necessity." First, it is unclear whether the protest letter at issue is the sort of "work record" contemplated by the statute. The Colorado Division of Employment and Training does require the employer to include the "reason [that the claimant was] separated from employment," but it does not say whether that requirement would include a protest letter like the one filed by Shaw's employer. *See* Colorado Department of Labor and Employment Division of Employment & Training, *Colorado Employer's Handbook* 5–6. Of course, we cannot determine whether the letter was actually included in Shaw's "work record" because it was not designated as part of the Record on Appeal. Fed.R.App.P. 10(b)(3). As a result, we are unable to ascertain what benefit, if any, Shaw would have had by attempting to use § 8–72–107 as a discovery device.

**6.** Arguably, this letter was so ambiguous that it amounted to a violation of the division's own internal rules. Under those rules, an employer wishing to protest a claim must "state reason[s]

however, involved additional allegations, some of which the Referee found persuasive. For example, he concluded that Shaw had failed to properly supervise the loading of trucks although that issue was not included in the protest letter. I R. 121. We think Shaw was entitled, as a matter of right, to know in advance all of the factual and legal issues that would be presented at the hearing. On the basis of the averments of Shaw's complaint, Colorado's notice and discovery procedures were insufficient to satisfy that requirement of basic fairness guaranteed to Shaw.

■ We note that the district court relied in part on the availability of state judicial remedies, citing *Cohen v. City of Philadelphia,* 736 F.2d 81 (3d Cir.), *cert. denied,* 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984), for the proposition that "[w]here substantive mistakes in the notice and hearing in a given case are subject to correction by the state's judiciary, no federal claim is created." I R. 60. The reasoning of that case is inapplicable here because the deprivation of unemployment benefits resulted from an established State procedure, rather than a random and unauthorized act of a state official. *See Stana v. School District,* 775 F.2d 122, 129–30 (3d Cir.1985); *Berlanti v. Bodman,* 780 F.2d 296, 300–02 (3d Cir.1985); *Brown v. Trench,* 787 F.2d 167 (3d Cir.1986); *see also Logan v. Zimmerman Brush,* 455 U.S. 422, 435–36, 102 S.Ct. 1148, (1982).

■ Lastly, we are not persuaded by the consideration that the volume of appeals in such cases required expeditious proceedings, without a more specific notice. The State could afford a fair hearing premised on fair notice by a brief statement of particular factual and legal points to be raised at the hearing, and here the protest letter itself could have been furnished with a warning to the parties that there would be no "issue switching" at the hearing. *See Camacho v. Bowling,* 562 F.Supp. 1012, 1024 (N.D.Ill.1983); *Pregent v. New Hampshire Department of Employment Security,* 361 F.Supp. 782, 796–97 (D.N.H.1973), *vacated on other grounds,* 417 U.S. 903, 94 S.Ct. 2595, 41 L.Ed.2d 207 (1974). And we note further that while the burden on the administrative process of a particular procedural safeguard should be considered, *Eldridge,* 424 U.S. at 335, 96 S.Ct. at 903, administrative "speed and efficiency" cannot justify a failure to observe basic fairness in procedure. *See Stanley v. Illinois,* 405 U.S. 645, 656, 92 S.Ct. 1208, 1215, 31 L.Ed.2d 551 (1972).

## III.

### Conclusion

In sum, we hold that Shaw's complaint states a meritorious claim that the Colorado procedure for administering unemployment benefits violated the "fair hearing" requirement of 42 U.S.C. § 503(a)(3) due to lack of fair notice of factual and legal issues to be faced, without deciding, of course, whether Shaw should prevail after further proceedings developing the merits and defenses as to his claim.[7] Accordingly,

---

for separation clearly." Colorado Department of Labor and Employment Division of Employment & Training, *Colorado Employer's Handbook* 31. The Division explains:

> If [the claimant] was separated from his job for any reason but lack of work, [the employer] must furnish the Division with detailed information. [The employer's] statement should contain all important facts, such as names of witnesses, exact dates, times, and places in which incidents occurred, reference to union contracts, commission agreements, medical reports, and other pertinent documents.
>
> [The employer is] required to tell [his] story completely. The claimant is also required to state his case fully.

> If [the employer] fail[s] to provide separation and other work history information when requested, [he] lose[s] [his] right to protest the Division's decision regarding the worker's claim for benefits.

*Id.* at 31–32.

7. We rest our ruling on the statutory claim, although both the "fair hearing" issue under the Act and the constitutional question appear to be indistinguishable in this instance. *See Ross v. Horn,* 598 F.2d 1312, 1318 n. 4 (3d Cir.1979), *cert. denied,* 448 U.S. 906, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980); *Camacho v. Bowling,* 562 F.Supp. 1012, 1020 (N.D.Ill.1983). We note, however, that several district courts have invalidated similar administrative procedures on due process grounds. *See Camacho v. Bowling,* 562

the district court's judgment of dismissal is REVERSED and the case is REMANDED for further proceedings.

F.Supp. 1012, 1024–25 (N.D.Ill.1983); *Steinberg v. Fusari,* 364 F.Supp. 922, 936 (D.Conn.1973), *vacated on other grounds,* 419 U.S. 379, 95 S.Ct. 533, 42 L.Ed.2d 521 (1975); *Pregent v. New Hampshire Dep't of Employment Security,* 361 F.Supp. 782, 796 (D.N.H.1973), *vacated on other grounds,* 417 U.S. 903, 94 S.Ct. 2595, 41 L.Ed.2d 207 (1974). The Colorado Supreme Court, however, recently rejected a similar constitutional challenge in *Ward v. Industrial Commission,* 699 P.2d 960, 969 (Colo.1985).